THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* DOMINGO CRUZ VEGA, Defendant and Appellant.

No. CR-64-262.     Decided June 30, 1966.

*Víctor Tirado Saltares* for appellant. *Rodolfo Cruz Contreras, Acting Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The district attorney of the Mayagüez Part of the Superior Court filed an information against Domingo Cruz Vega, alleging that "on or about November 16, 1962, and in Lajas, Puerto Rico, which forms part of the Superior Court of Puerto Rico, Mayagüez Part, he unlawfully, wilfully, maliciously, criminally and with the intent to destroy, set fire to, and burned during the evening hours an inhabited house at that moment with persons inside, which house was not the property of the defendant but of Eladio Irizarry Rodríguez."

The only way to understand the assignment of errors and the issue posed in this appeal is by making a brief summary of the two most important incriminating testimonies. The

principal prosecution witness was Gregoria Santiago Claudio, who testified that on November 16, 1962, she was living at a place known as Ancones of the ward of Lajas, in the town of Lajas; that on that date she knew the defendant, Domingo Cruz Vega, and afterwards she explained "that I lived with him"; that on the date of the fire—November 16, 1962—she was living with the defendant; that on that same date she knew Eladio Irizarry Rodríguez; that the house where she lived in the ward of Ancones belonged to Eladio Irizarry Rodríguez; that on November 16, the defendant burned the house; that she saw him setting fire to the house with a sack which was afire which he threw on top of the house; that when defendant did that, she was outside looking for a small chamber pot for the baby girl; that she, Eladio Irizarry, Félix Jusino, and a little girl named Teodora Irizarry Rodríguez lived in the house; that she knew the defendant because he was from Lajas and they were friends; that Eladio Irizarry was her husband before that time; that Eladio was the only husband she ever had; that she did not have any children by Eladio Irizarry; that she was the mother of the girl who was with her on the evening of November 16, 1962; that the girl is Eladio Irizarry's; that on the night of the fire the girl was in the bedroom with the witness; that Félix Jusino Torres was also in the bedroom; that when she saw Domingo Cruz Vega, the defendant, she was outside and Félix inside, in the bedroom with the child; that after setting the fire defendant kept watching it; that the defendant then said to her, "nothing is going to happen to you"; that she left immediately to report to the Lajas police station where she spoke with the judge of Lajas; that if the people had not hurried to take out the little girl, she would have burned to death; that the hammock where she was sleeping had already caught fire; that if Félix had not run to take the little girl out, she would have burned to death.

On cross-examination by the defense attorney, she said that the night she went to Lajas there were present Garrastazú and Brugman, the police sergeant, and also García; that they wrote down what she said on a piece of yellow paper, and the justice of the peace also wrote on a different piece of paper; that she then went to see district attorney Limeres and also told him about the fire, and the district attorney wrote down what she said; that she had also testified before the defense attorney; that on the day of the occurrence she had told Sergeant Brugman that she had seen Domingo setting the fire, and also told the sergeant that Don Félix was also there, and that if it had not been for Don Félix the baby would have burned to death because the hammock was afire; that her clothes, those of the baby, those of Eladio Irizarry, the bed, and a new mattress had been burned; that she told the same things to the justice of the peace; that if it had not been for Don Félix who took the baby out of the hammock, she would have been burned; that Don Félix burned himself a little bit (*pointing to the hand*) when he picked up the baby; that Don Félix had to go to the hospital for treatment; that nothing happened to the baby, what happened was that she asphyxiated, and Don Félix burned himself when he picked up the baby and the baby did not get burned. When confronted with a written statement given by her, she admitted that it was a mistake to say that she testified the same night of the occurrence—November 16, 1962—since it appeared from the statement that she testified on November 17, the day after the disaster; that in the statement she said that the daughter was Don Eladio's, but that she begot that child by another man; that while she was looking for a small chamber pot for the baby, "I saw Domingo Cruz coming from the back of the house carrying in his hands a sack of pita which was on fire." When she was asked to explain why she had testified before that defendant came by the front of the house and

now she said that defendant had come by the back of the house, she did not answer notwithstanding she was rebuked for telling a lie; that in the written statement she said that when the small house caught fire, "I yelled to the neighbors" to come right away because "there was no one there," and just then Domingo Cruz, the defendant, started running . . . he fled by a mountain; that Domingo Cruz said to her, "don't be afraid, nothing is going to happen to you," and fled by a mountain (she had testified before that after setting fire to the house, Domingo Cruz had kept watching the fire); that in the written statement she said "since my baby girl was asleep inside the house, I went in quickly and took her out before she got burned." And when she testified before the jury she said that Don Félix was the one who took out the baby, and now she rectified the written statement and ratified the oral one saying simply that Don Félix took her out; that when she testified the day after the fire she said, referring to defendant-appellant Domingo Cruz, "I am also pregnant by him"; that she also testified that the day of the fire her "husband," Eladio Irizarry, was not inside the house, "I was with Félix Jusino, an old man neighbor of mine." When testifying later before the jury, she said that Félix Jusino was her neighbor, that he lived farther up from us, and that Jusino burned his hands because his house had also been burned, and that Domingo Cruz had burned Don Félix's house; and that the said Félix would be a witness at the trial; that she had said in the written statement that Félix Jusino was her neighbor, and when testifying before the jury she had said that Félix Jusino lived in the witness' house; that she lied when testifying the latter; that she made a mistake in her first version when she testified before the jury that Don Félix was sleeping, having said in the written statement that Don Félix was standing at the door of the house and I was outside looking for the small chamber pot; that the night before the continuance of the case which was

set for January 30, 1963, Domingo Cruz tried to set fire to her house; that the day before the trial Domingo Cruz again tried to set fire to the house; that the day after the house was set on fire Domingo Cruz again wanted to burn her house; that in addition to burning Don Félix' house, Domingo Cruz had tried six other times to burn the witness' house; that on those six occasions she had seen him with her own eyes; that she went to complain on the six occasions but was believed only once, and that the other times no one had believed her nor accused Domingo Cruz; that they were investigating her because she was the one who set fire to her house and then blamed it on Domingo; that she was arrested in order to investigate her in connection with the fires; that when Juan Millán's canes were burned she appeared and told the district attorney that she saw with her own eyes when Domingo set fire to the canes, but Domingo was not accused; that it is true that Domingo Cruz burned the house of Manuel Pagán Toro, another prosecution witness.

The second prosecution witness was Félix Jusino Torres, eighty and odd years of age and of failing memory according to his own admission, who testified that on or about November 16, 1962, he was in the house of Eladio Irizarry, "a fire had occurred there before and we were trying to find out who set the fire; the lady then went around the back of the house to get a small chamber pot . . . about seven or eight in the evening, because I remember it was at night; then I remained with the door ajar and heard footsteps, and when I heard the footsteps, someone threw on top of the house a sack which was on fire. As he kept looking like this, she returned with the chamber pot and he, Domingo Cruz Vega, fled and ran away."

On cross-examination by the defense attorney, he testified that a few days ago he was given forty tablets for the brain; that the witness' house was burned three or four days prior to that of Eladio Irizarry about ten in the morning; that

during the daytime he goes around and at night he goes to sleep to the house of Eloina López, where he lives since his house was burned; that the witness told the defense attorney that Pito (Pitín, Manuel Pagán Toro) sometimes seems to be all right and sometimes seems to be unbalanced; that the witness is not crazy, that the attorney should not confuse an old man with a lunatic.

The third prosecution witness was Eladio Irizarry Rodríguez, who testified that on November 16, 1962, he was living in the house of Tití Almodóvar, farther down from Galarza, jurisdiction of Lajas; that he knows Gregoria Claudio Santiago, who at that time lived with him in a house owned by him, as well as Don Félix whose house was burned a few days ago; that they set fire to the house on the top, burning it, but that the witness had not witnessed the fire. The fourth prosecution witness was policeman Vicente Garrastazú. He knew the complainant, Gregoria Santiago Claudio, Eladio Irizarry, Félix Jusino Torres; that he saw them in the house on November 16, in the house of Eladio Irizarry; that that night he saw the house the roof of which had been burned; that it was made of royal palm leaves; that he took Gregoria before the justice of the peace of Lajas on the occasion of the fire in her house.

On cross-examination by the defense attorney, he testified that the lady had been to see him several times to complain that Domingo had set fire to her house, the last time having been the day before yesterday (the day before yesterday, that is, two days before the trial); that she also accused him of setting fire to the canes of Juan Martínez; that no probable cause was ever found.

Defendant's evidence, briefly stated, was as follows: Sergeant Enrique A. Brugman of the Lajas Police testified that the complainant, Gregoria Santiago, told him that defendant, Domingo Cruz, was on top of a rock and threw the sack from there, that she heard the noise, went out and saw the

defendant; that when that occurred she was alone in the house with the baby girl, who was in bed when the fire broke out; Dr. William Nazario del Río, acting director of the health center of Lajas, testified that he knew the prosecution witness, Félix Jusino Torres, who had been a patient of the hospital under his management, and that they had to discharge him because he was out of his mind and was causing trouble; that when he entered the hospital he was not unconscious, unsound, according to medical parlance, and that the police found him in a yard and brought him to the hospital.

This picture is sad enough to entertain reasonable doubt in favor of defendant. As we have seen, the cross-examination by the defense reduces to a minimum complainant's credibility. Each one of her versions on the manner of performing the wrongful act, on the situation of the presumptive authors of the fire, of the persons who were inside the house, is different from the others, conflicting, and shows either a persecution complex or a pathological pyromania on the verge of insanity. The incoherence in talking, the tendency to assert as true everything asked of her, to mix up the most elementary facts of the account, to deviate from the reality without any logical gain, make the case even more suspicious.

The judgment rendered by the Mayagüez Part of the Superior Court on June 3, 1963, will be reversed.

Mr. Justice Ramírez Bages dissented. Mr. Justice Rigau did not participate herein.